# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:13-cr-00339-GMN-PAL-1 |
| vs. | ) | |
| | ) | **ORDER** |
| JASON MATTHEW ROMERO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant Jason Romero's ("Defendant's") Motion for Compassionate Release, (ECF No. 87). The Government filed a Response, (ECF No. 90), and Defendant filed a Reply, (ECF No. 95).

Also pending before the Court are the unopposed Motions to Seal, (ECF Nos. 88, 91, 96), which request that Defendant's medical records be sealed.

For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Compassionate Release and **GRANTS** the Motions to Seal.

## I.       BACKGROUND

On June 30, 2014, Petitioner pleaded guilty to Counts One, Three, Five, and Seven of the Indictment, Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951; and Count Eight of the Indictment, Carrying and Use of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A). (*See* Plea Agreement, ECF No. 30); (*see also* Mins. Proceedings, ECF No. 29). The Court sentenced Petitioner to 60-months custody as to Counts One, Three, Five, and Seven, per count, to run concurrent to each other, and 84-months custody as to Count Eight, to run consecutive to all other counts. (*See* J., ECF No. 37); (*see also* Mins. Proceedings, ECF No. 35). Defendant is presently in custody at the

///

Lompoc United States Penitentiary ("USP Lompoc") and now petitions this Court for compassionate release. (*See* Mot. Compassionate Release ("MCR"), ECF No. 87).

## II.              LEGAL STANDARD

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), authorizes the sentencing court to modify a defendant's sentence in limited circumstances. 18 U.S.C. § 3582(c)(1)(A). The sentencing court may order compassionate release, "if after considering the factors set forth in 18 U.S.C. § 3553(a)," the defendant has demonstrated: (1) he has exhausted his administrative remedies; (2) "extraordinary and compelling reasons" warrant a reduction in his sentence; and (3) he is not "a danger to the safety of any other person or the community." 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13.  Under United States Sentencing Guideline § 1B1.13, "extraordinary and compelling reasons" include, among other things, terminal illnesses and medical conditions "that substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13.  The court may also consider "other reasons" including a "reason other than, or in combination with" a reason specifically provided in the Sentencing Guidelines. *Id.*  The decision to grant compassionate release is in the sentencing court's discretion. *See United States v. Wade*, 2:99-cr-00257-CAS-3, 2020 WL 1864906, at \*5 (C.D. Cal. Apr. 13, 2020).

## III.             DISCUSSION

As an initial matter, the parties do not dispute that Defendant properly exhausted his administrative remedies.  Therefore, the Court's discussion will be limited to an analysis of whether Defendant has presented extraordinary and compelling reasons for release, as well as an assessment of the § 3553(a) factors.

///

## A.  EXTRAORDINARY AND COMPELLING REASONS

Defendant argues that he is eligible for compassionate release because he is not receiving adequate medical treatment for his heart condition, which also makes him particularly susceptible to COVID-19 in a custodial setting. (MCR 10:14–14:17).  Defendant, age forty, has high blood pressure, hyperlipidemia, and suffered from a heart murmur when he was a child. (2021 Batch of Medical Records at 81, 177, Ex. B to MCR, ECF No. 89).  Additionally, Defendant's family has a history of experiencing heart attacks at young ages. (2020 Batch of Medical Records at 5, Ex. A to MCR, ECF No. 89).  Defendant's father died of a heart attack at age forty-two, and three of Defendant's grandparents died of heart attacks at early ages as well. (*Id.*, Ex. A to MCR).

In August of 2020, Defendant submitted an inmate request for triage services because his heart was beating irregularly and he was experiencing dizziness. (*Id.* at 50, Ex. A to MCR). Defendant's heart condition worsened over the course of the next year. (*See generally id.*, Ex. A to MCR; 2021 Batch of Medical Records, Ex. B to MCR).  In June of 2021, Defendant became unconscious and unresponsive for several minutes. (2021 Batch of Medical Records at 92, Ex. B to MCR).  Defendant's medical records from this incident state that his "heart rate and rhythm are irregular with A-Fib and RVR and multifocal PVCs or aberrant ventricular conduction." (*Id.* at 93, Ex. B to MCR).  "A-Fib," or atrial fibrillation, is "an irregular and often very rapid heart rhythm . . . that can lead to blood clots in the heart." *Atrial Fibrillation, Symptoms and Causes*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/atrial-fibrillation/symptoms-causes/syc-20350624 (last visited November 29, 2022).  "A-fib increases the risk of stroke, heart failure, and other heart-related complications." *Id.*

After the incident in which Defendant became unconscious, a medical provider with the Bureau of Prisons Health Services advised Defendant that he would need to see a cardiologist. (2021 Batch of Medical Records at 90, Ex. B to MCR).  Defendant eventually saw a

cardiologist in September of 2021. (*Id.* at 177, Ex. B to MCR).  At this visit, an electrocardiogram revealed that Defendant suffers from sinus bradycardia. (*Id.* at 178, Ex. B to MCR).

The Court agrees with Defendant that his heart condition presents an extraordinary and compelling circumstance to justify a reduced sentence.[1] *See, e.g.*, *United States v. Perez*, No. CR-18-00778-PHX-DGC, 2021 WL 24584, at *3, *5 (D. Ariz. Jan. 4, 2021) (finding that "Defendant has shown extraordinary and compelling reasons for compassionate release" given Defendant's medical conditions, including heart disease, and related increased risk of severe illness from COVID-19).  Defendant's family history of fatal heart conditions combined with Defendant's age and personal history of drug use place him at great risk for heart damage. Though the Government argues that Defendant is receiving attentive medical care in prison, (*see* Resp. 7:12), Defendant did not see a cardiologist until nearly a year after he first raised concerns about his heart condition, and only after an incident occurred during which he lost consciousness.  The Court finds that Defendant's medical needs to address a potentially life-threatening heart condition are not being met in prison, therefore warranting compassionate release. *See United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020).

Additionally, Defendant's heart condition and history of drug use likely places him at a higher risk of complications with COVID-19. *See United States v. Monroy*, No. 11-CR-00656-LHK, 2020 WL 7342735, at *3 (N.D. Cal. Dec. 14, 2020) ("The CDC website confirms that individuals with heart conditions . . . have an increased risk of severe illness from COVID-19."); *see also COVID-19 and People at Increased Risk*, Ctr. for Disease Control and Prevention, https://www.cdc.gov/drugoverdose/resources/covid-drugs-

---

[1] Defendant additionally argues that he has been held in solitary confinement since he was assaulted by other inmates, and his placement in solitary confinement constitutes another extraordinary and compelling reason for a reduced sentence. (MCR 14:20–23).  Because the Court finds that Defendant's heart condition is an extraordinary and compelling reason on its own, the Court does not address the parties' arguments concerning Defendant's alleged solitary confinement.

QA.html#:~:text=Having%20a%20substance%20use%20disorder,questions%20related%20to%20their%20risk. (last visited November 29, 2022).  However, compassionate release motions based upon the risk of contracting COVID-19 are now routinely denied where the inmate has access to the COVID-19 vaccine. *See, e.g.*, *United States v. Burrow*, No. 19-cr-00295, 2022 WL 2307155, at *2 (D. Nev. June 27, 2022); *United States v. Bondarenko*, No. 2:17-cr-00306, 2022 WL 16701934, at *3 (D. Nev. Nov. 3, 2022); *United States v. Thompson*, No. 2:16-cr-00230, 2021 WL 2324498, at *2 (D. Nev. June 7, 2021); *United States v. Young*, No. 3:08-cr-00120, 2021WL 4899159, at *2 (D. Nev. Oct. 20, 2021).  Here, Defendant is vaccinated. (2021 Batch of Medical Records at 128, Ex. B to MCR).  Although Defendant's heightened risk for COVID-19 complications is not an extraordinary and compelling reason for a reduced sentence on its own, the Court nonetheless finds that Defendant's heightened risk further supports the Court's conclusion to grant compassionate release based on his heart condition.

### B.  SECTION 3553(A) FACTORS

Further, the factors found in 18 U.S.C. § 3553(a) weigh in favor of Defendant's release. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release).  These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a).

In the present case, Defendant is serving a term of imprisonment for crimes relating to an armed robbery. (*See generally* J., ECF No. 37).  The Court recognizes that Defendant's crimes were crimes of violence. (*Id.*) (identifying nature of offenses as "Interference with

Commerce by Robbery and Carrying and Use of a Firearm During and in Relation to a *Crime of Violence*) (emphasis added).  But the violent nature of an armed robbery does not foreclose the possibility of compassionate release. *See, e.g.*, *United States v. Jones*, 482 F. Supp. 3d 969, 972, 985 (N.D. Cal. 2020) (granting compassionate release to defendant who plead guilty to five counts of armed robbery and two counts of using a firearm in furtherance of a crime of violence); *United States v. Mack*, No. 2:98-CR-162, 2021 WL 1099595, at *4–5 (S.D. Ohio Mar. 23, 2021) (granting motion for compassionate release for defendant convicted of three counts of armed bank robbery, three firearm counts, and six counts of unarmed bank robbery). And Defendant has served most of his sentence for this crime.[2]  Indeed, Defendant is eligible for the halfway house in January, 2023, and is expected be to released in January, 2024. (MCR 20:24–21:1).

Furthermore, the Court does not find that Defendant currently poses a danger to others. Defendant's criminal history outside of this case is limited to one conviction for possession of marijuana. (*See* Presentence Report at 13).  The Court finds that the hardship Defendant has experienced while incarcerated is enough of a deterrent from future criminal activity.  Any incremental deterrent value that could be derived from Defendant's time spent serving the short time remaining in his sentence is outweighed by Defendant's medical needs.

The Court is aware of the Government's concerns regarding Defendant's alleged illegal drug use while in prison. (*See* Resp. 9:16–23).  However, Defendant disputes that he used illegal drugs in prison, and it appears that Defendant was not disciplined for any illegal drug use.[3] (*See* Reply 7:21–8:6).  Moreover, upon release, Defendant will be on supervised release for a term of three years. (*See* J. at 4).  Any drug use will be a violation of the conditions of supervision.

---

[2] Defendant has served eight years of his total sentence of twelve years. (*See* J. at 3, ECF No. 37).
[3] Defendant acknowledges that he was disciplined for possessing alcohol in prison. (Reply 7:22–23).

Finally, Defendant has a strong family support system that can provide stable housing and support for needed medical care. (MCR 17:15–18:2).  This support system will assist Defendant's "transition to community life" and "fulfill[] rehabilitative ends" while he is on supervised release. *United States v. Johnson*, 529 U.S. 53, 59 (2000).  As such, the Court finds that the § 3553(a) factors weigh in favor of release.  The Court will exercise its discretion to reduce Defendant's sentence because extraordinary and compelling reasons warrant such a reduction.

**V.     CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release, (ECF No. 87), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's previously imposed sentence of 84 months' imprisonment is reduced to **TIME SERVED with three (3) years of supervision to follow.**

**IT IS FURTHER ORDERED** that this order is **STAYED for up to fourteen days**, for the verification of Defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure Defendant's safe release.  Defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for Defendant to travel.  There shall be no delay in ensuring travel arrangements.  If more than fourteen days are needed to make appropriate travel arrangements and ensure Defendant's safe release, the parties shall immediately notify the Court and show cause as to why the stay should be extended.

///

///

///

///

1    **IT IS FURTHER ORDERED** that the Motions to Seal Exhibits, (ECF Nos. 88, 91, 96),

2  are **GRANTED**.[4]

3    Dated this  29  day of November, 2022.

_____

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[4] The Exhibits contain Defendant's confidential medical records.  Accordingly, the Court finds good cause to seal the records. *See, e.g.*, *Johnson v. Tambe*, No. 19-141-TSZ-MLP, 2019 WL 4014256, at *2 (W.D. Wash. Aug. 26, 2019) (finding plaintiff's "privacy interest in his own medical records to be a sufficiently compelling reason to seal the medical records themselves").